IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| GLEN Y. MORIBE, Individually and as successor Personal Representative for the Estate of Connie Elizabeth Yuk Han Moribe Wharton, Deceased, and as successor Personal Representative for the Estate of Sophia Grace Hitomi Wharton, Deceased; SANDRA E. MORIBE, )<br><br>        Plaintiffs,<br><br>        vs.<br><br>AMERICAN WATER HEATER COMPANY; INTERMATIC INCORPORATED; JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 3-10; DOE PARTNERSHIPS 1-10; ROE "NON-PROFIT" CORPORATIONS 1-10; ROE GOVERNMENTAL ENTITIES 1-10,<br><br>        Defendants. | Civ. No. 21-00254 HG-WRP |

**ORDER DENYING DEFENDANT AMERICAN WATER HEATER COMPANY'S MOTION TO EXCLUDE TESTIMONY OF RICHARD MEIER (ECF No. 102)**

**and**

**DENYING DEFENDANT AMERICAN WATER HEATER COMPANY'S MOTION TO EXCLUDE TESTIMONY OF JOELLEN GILL (ECF No. 99)**

On October 17, 2018, Nathan Wharton, his wife Connie Elizabeth Yuk Han Moribe Wharton, and their infant daughter Sophia Grace Hitomi Wharton resided at a house located at 733A Luakaha Street in Honolulu, Hawaii.

Before 7:00 a.m. on October 17, 2018, Nathan Wharton left

1

the house to go to work.

At approximately 8:08 a.m., an explosion occurred at the house, resulting in a fire that spread throughout the home. Connie and Sophia Wharton died as a result.

Plaintiffs filed a lawsuit against Defendant American Water Heater Company and Defendant Intermatic Incorporated, claiming that their products and the products' lack of warnings caused the explosion and fire.

Plaintiffs claim that Defendant American Water Heater Company's electric water heater product installed at the home was defective.  They also claim Intermatic Incorporated's electric water heater timer switch product or "timer" installed on the electric water heater at the home was defective.

Plaintiffs additionally claim that the products contained insufficient warnings and caused the October 17, 2018 fire.

Plaintiffs offer evidence of causation through fire investigation expert, Richard J. Meier.  Mr. Meier provided an expert report stating that the ignition of the explosion and fire was caused by Defendant Water Heater Company's product, which was powered by Defendant Intermatic Incorporated's product.

Plaintiffs also seek to provide expert evidence that Defendant American Water Heater's product contained insufficient warnings.  Plaintiffs intend to call JoEllen Gill to testify that in her expertise as an engineer and a Certified Human Factors

2

Professional and a Certified Safety Professional, Defendant American Water Heater Company's product did not provide sufficient safety warnings for consumers.

Defendant American Water Heater Company filed Motions pursuant to Federal Rule of Evidence 702 seeking to exclude Mr. Meier and Ms. Gill from testifying at trial.

Defendant American Water Heater Company's Motion to Exclude Testimony of Richard Meier (ECF No. 102) is **DENIED.**

Defendant American Water Heater Company's Motion to Exclude Testimony of JoEllen Gill (ECF No. 99) is **DENIED.**

## PROCEDURAL HISTORY

On July 18, 2019, Plaintiffs Nathan L.Y. Wharton, Individually and as Personal Representative for the Estate of Connie Elizabeth Yuk Han Moribe Wharton, Deceased, and as Personal Representative for the Estate of Sophia Grace Hitomi Wharton, Deceased; Glen Y. Moribe; and Sandra E. Moribe filed a Complaint in the Circuit Court of the First Circuit, State of Hawaii.  (ECF No. 1-2).

On May 3, 2021, a First Amended Complaint was filed in the Hawaii State Circuit Court.  (ECF No. 1-3).

On May 28, 2021, Defendant American Water Heater Company removed the action to this Court with the consent of Defendant Intermatic Incorporated.  (ECF No. 1).

On January 17, 2023, Plaintiff filed a Suggestion of Death as to Plaintiff Nathan L.Y. Wharton, who died on November 18, 2022.  (ECF No. 50).

On April 26, 2023, Defendant American Water Heater Company filed a Motion to Dismiss the claims brought by Nathan Wharton. (ECF No. 53).

On July 28, 2023, the Magistrate Judge issued a FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANT AMERICAN WATER HEATER COMPANY'S MOTION TO DISMISS CLAIMS MADE BY PLAINTIFF NATHAN L.Y. WHARTON.  (ECF No. 71).

On August 1, 2023, the Magistrate Judge issued an AMENDED FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANT AMERICAN WATER HEATER COMPANY'S MOTION TO DISMISS CLAIMS MADE BY PLAINTIFF NATHAN L.Y. WHARTON.  (ECF No. 72).

On August 15, 2023, Defendant Intermatic Incorporated filed a Motion for Summary Judgment and a Concise Statement of Facts. (ECF Nos. 76 and 77).

On the same date, Defendant American Water Heater Company filed a Motion for Summary Judgment and a Concise Statement of Facts.  (ECF Nos. 78 and 79).

On August 21, 2023, the Parties filed a STIPULATION TO SUBSTITUTE SUCCESSOR PERSONAL REPRESENTATIVE GLEN Y. MORIBE INTO THIS ACTION FOR THE ESTATE OF CONNIE ELIZABETH YUK HAN MORIBE WHARTON, DECEASED AND THE ESTATE OF SOPHIA GRACE HITOMI WHARTON,

DECEASED.  (ECF No. 81).

On September 19, 2023, Defendant American Water Heater Company filed a Motion to Exclude Testimony of JoEllen Gill. (ECF No. 99).

Also on September 19, 2023, Defendant American Water Heater Company filed a Motion to Exclude Testimony of Richard Meier. (ECF No. 102).

The following day, on September 2023, Defendant American Water Heater Company filed an Errata to its Motion to Strike Testimony of Richard Meier.  (ECF No. 103).

On September 20, 2023, the Court issued an ORDER ADOPTING THE MAGISTRATE JUDGE'S AMENDED FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANT AMERICAN WATER HEATER COMPANY'S MOTION TO DISMISS CLAIMS MADE BY PLAINTIFF NATHAN L.Y. WHARTON AND APPROVING THE PARTIES' STIPULATION TO SUBSTITUTE SUCCESSOR PERSONAL REPRESENTATIVE GLEN Y. MORIBE INTO THIS ACTION FOR THE ESTATE OF CONNIE ELIZABETH YUK HAN MORIBE WHARTON, DECEASED, AND THE ESTATE OF SOPHIA GRACE HITOMI WHARTON, DECEASED.  (ECF No. 104).

On September 22, 2023, Defendant American Water Heater Company filed its Compliance with Local Rule 7.8 regarding its Motions to Exclude Expert Testimony.  (ECF Nos. 106 and 107).

On October 5, 2023, Plaintiffs filed their Oppositions to Defendant's Motions to Exclude Expert Testimony.  (ECF Nos. 111

and 112).

On October 6, 2023, Defendant Intermatic Incorporated filed Statements of No Position as to Defendant American Water Heater Company's Motions to Exclude Expert Testimony. (ECF Nos. 113 and 114).

On October 12, 2023, the Court held a hearing on Defendants' Motions for Summary Judgment. (ECF No. 115). At the hearing, the Court ordered the Parties to meet and confer about whether they were requesting a hearing on Defendant American Water Heater Company's Motions to Exclude Expert Testimony. (Id.)

On October 17, 2023, the Court issued an ORDER DENYING DEFENDANT INTERMATIC INCORPORATED'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT AMERICAN WATER HEATER COMPANY'S MOTION FOR SUMMARY JUDGMENT (ECF No. 116).

On October 20, 2023, the Parties filed a Notice regarding their meet and confer discussion regarding Defendant American Water Heater's Motions to Exclude Testimony. (ECF No. 117).

On October 24, 2023, Defendant American Water Heater Company filed its Replies in Support of its Motions to Exclude Expert Testimony. (ECF Nos. 118, 119).

On November 1, 2023, the Court issued a Minute Order stating that it elected to decide Defendant American Water Heater Company's Motions to Exclude Expert Testimony without a hearing. (ECF No. 122).

## **BACKGROUND**

**Fire And Explosion on October 17, 2018:**

On October 17, 2018, Nathan L.Y. Wharton, his wife Connie Elizabeth Yuk Han Moribe Wharton, and their infant daughter Sophia Grace Hitomi Wharton resided in a house at 733A Luakaha Street, Honolulu, Hawaii.

Inside the carport of the house was a storage closet that contained various items including:

(1)   an electric water heater manufactured by Defendant American Water Heater Company ("Water Heater"); and

(2)   an electric water heater timer switch ("Timer") that was manufactured by Defendant Intermatic Incorporated.

(Report of Richard J. Meier, Plaintiff's Fire and Explosion Investigator & Analyst, ("Meier Report"), attached as Ex. 4 to Def.'s Motion, at pp. 9, 18-23, 33, ECF No. 102-6).

Also located in the storage closet were:

[R]ifle cartridge ammunition and canned smokeless powder for reloading.  These contained solids not capable of fueling the initial explosion.  They found several sources that could be the diffuse fuel that was ignited in the initial explosion.  These included: two 5-gallon plastic gasoline cans for a generator; and numerous aerosol cans (which typically contain a propane/butane blend as the propellant), and three 20 lb. LP gas (propane) cylinders along with two gas grills.

(Id. at p. 15).

There were several electrical devices in the area of the storage closet including an overhead light and switch, electrical

7

receptacles, a smoke detector, and Defendants' Water Heater and Timer.  (Id. at p. 17).

Defendant American Water Heater Company's Water Heater contained an internal thermostat to control the water temperature.  (Id. at pp. 19-22).  The Water Heater was powered by the home's electrical system connected to a solar system. (Id.)

Defendant Intermatic Incorporated's Timer controlled the power to the Water Heater.  (Id.)  The Timer was not supplied with the Water Heater but was installed on the outside separately as part of the solar system.  (Id. at pp. 22).

On the morning of October 17, 2018, Nathan Wharton left his home and arrived at work at approximately 7:00 a.m.  Nathan's wife Connie and their daughter remained at the home.  (Meier Report at pp. 4, 16, ECF No. 102-6).

An hour later, at 8:07:58 a.m., Connie Wharton walked into the carport and opened the storage closet where the Water Heater and Timer were located.  (Id. at pp. 13, 18).  The closet door was opened for approximately 15 seconds.  (Id. at pp. 11, 18).

At approximately, 8:08:13 a.m., an explosion occurred in the storage closet followed by a fire.  (Id. at pp. 6, 11-14, 18). Both Connie Wharton and Sophia Wharton were killed as a result of the explosion and fire.  (Id. at p. 4).

## STANDARD OF REVIEW

A party seeking to present an expert's testimony at trial carries the burden of establishing the testimony's admissibility. Cooper v. Brown, 510 F.3d 870, 942 (9th Cir. 2007).

Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993), govern the admissibility of such testimony.  Effective December 1, 2023, Rule 702 clarifies from prior versions of the rule that the proponent of the expert evidence must establish the admissibility of the evidence by a preponderance of the evidence.  Jennings-Moline v. DePuy Orthopaedics, Inc., 2023 WL 7190739, *3 (D. Idaho Nov. 1, 2023).

Rule 702 provides as follows:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

 (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

 (b) the testimony is based on sufficient facts or data;

 (c) the testimony is the product of reliable principles and methods; and

 (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702 (as amended Dec. 1, 2023).

The standard set forth in <u>Daubert</u> entrusts the court to act as gatekeepers in excluding unreliable expert testimony.  <u>Elosu v. Middlefork Ranch, Inc.</u>, 26 F.4th 1017, 1024 (9th Cir. 2022). To carry out its gatekeeping role, the Court must find that an expert's testimony is both relevant and reliable.  <u>Daubert</u>, 509 U.S. at 589; <u>see</u> <u>Primiano v. Cook</u>, 598 F.3d 558, 565 (9th Cir. 2010).

## **ANALYSIS**

Plaintiffs seek to introduce the expert opinion of Richard J. Meier.  Mr. Meier is a Fire and Explosion Investigator and Analyst.  Plaintiffs seek to elicit testimony from Mr. Meier at trial to support their theory as to the source and cause of the fire and explosion on October 17, 2018.

Plaintiffs also seek to introduce the expert opinion of JoEllen Gill.  Plaintiffs intend to call Ms. Gill to testify that in her expertise as an engineer and a Certified Human Factors Professional and a Certified Safety Professional, Defendant American Water Heater Company's product contained insufficient safety warnings for consumers.

## **I.   Mr. Meier's Expert Opinion**

Mr. Meier's expert report states that on October 17, 2018, there was fugitive gas in the storage closet at the Wharton

10

residence.  (Meier Report at p. 33, ECF No. 102-6).  Mr. Meier
determined that the explosion was the result of the ignition of
fugitive gas in the storage closet in the carport at the
residence.  (Id.)  It is his opinion that the fugitive gas leaked
from the propane cylinders stored in the closet.  (Id.)

Mr. Meier's expert opinion indicates the explosion was most
likely "ignited by an electrical arc from the thermostat in
[Defendant American Water Heater Company's] water heater in the
storage closet." (Id. at p. 33, see also p. 28).  Mr. Meier
determined that a defect in the design of the thermostat allowed
for an electrical arc.  (Id. at p. 33).  He also concluded that
the Water Heater did not have any warning labels on it to
indicate that it was a potential ignition source nor did it
provide sufficient warnings that it should not be near flammable
liquids or gases.  (Id.)

Mr. Meier found that the Timer, which controlled the
electricity to Defendant American Water Heater Company's Water
Heater, "was added as part of the solar water heater assembly
(and) limited the time that the electric heating system could
operate, and thereby create an arc." (Id. at p. 28).

Mr. Meier further explained his conclusions in a summary in
his Declaration, as follows:

> Based upon all of the above facts, obtained through my
> use of and adherence to standard fire investigation
> protocol and procedures regarding the examination of
> evidence from a fire scene, and my personal

11

observations, and as stated in my report and deposition testimony, it is my conclusion that the explosion and fire at issue was ignited by the opening or closing of the electrical contacts behind the small rectangular cover on the thermostat while power was supplied to the thermostat by the attached timer.  This opening or closing of the contacts created electric arc far larger than the [Minimum Ignition Energy] necessary to ignite the propane-air mixture gas.  This resulted in what I referred to in my report as a "rapid pressure event."

(Declaration of Richard J. Meier at p. 21, attached as Ex. 5 to Pl.'s Motion, ECF No. 102-7).

## A.   Mr. Meier's Expert Qualifications

Federal Rule of Evidence 702 provides that a qualified expert may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand evidence or to determine a fact in issue.  Fed. R. Evid. 702.  The standard for qualifying an expert witness is liberal.  Thomas v. Newton Int'l Enters., Inc., 42 F.3d 1266, 1269 (9th Cir. 1994).  A trial court, however, should exclude an expert witness from testifying if he lacks appropriate training, knowledge, or expertise to allow him to assist the trier of fact.  Avila v. Willits Env't Remediation Tr., 633 F.3d 828, 839 (9th Cir. 2011).

Mr. Meier is a full-time professional Fire and Explosion Investigator and Analyst.  (Meier Report at p. 3, ECF No. 102-4). He holds a Bachelor's Degree in Mechanical Engineering Technology and has been engaged in design and manufacturing engineering,

12

failure analysis, and fire and explosion investigation for thirty
years.  (Id. at p. 6).

Mr. Meier holds many certifications in fire investigation
and fire safety, including but not limited to:

>   (1)   Fire Investigation Technician (IAAI-FIT) and Certified
>         Fire Investigator (IAAI-CFI) through the International
>         Association of Arson Investigators;
>
>   (2)   Certified Fire Protection Specialist (CFPS) through the
>         National Fire Protection Association and the Certified
>         Fire Protection Specialist Board; and
>
>   (3)   Certified Fire and Explosion Investigator (CFEI),
>         Certified Fire Investigation Instructor (CFII), and
>         Certified Vehicle Fire Investigator (CVFI) through the
>         National Association of Fire Investigators (NAFI).

(Id.; Curriculum Vitae for Richard J. Meier at p. 4, attached as
Ex. 2 to Def.'s Motion, ECF No. 102-4).

Mr. Meier has extensive experience, education,
qualifications, certifications, and training in the fields of
fire and explosives investigation; fire safety and related codes
and standards; and warnings, labels and instructions for consumer
and industrial products.  (Meier CV, attached as Ex. 2 to Def.'s
Motion, ECF No. 102-4).  Extensive practical experience, coupled
with academic credentials, such as here, are sufficient to
qualify an expert witness.  Rogers v. Raymark Indus., Inc., 922
F.2d 1426, 1429 (9th Cir. 1991); see Bryant v. City of Chicago,
200 F.3d 1092, 1098 (7th Cir. 2000).

Defendant American Water Heater Company complains that Mr.
Meier is not qualified because he is not an electrical engineer

and has never worked for a water heater manufacturer.  (Def.'s Motion at p. 25, ECF No. 103-1).  Courts generally do not require that a witness's expertise be precisely matched to the questions at issue.  See Doe v. Cutter Biological, Inc., 971 F.2d 375, 385-86 (9th Cir. 1992).

Lack of detailed experience affects credibility rather than admissibility.  McCullock v. H.B. Fuller Co., 61 F.3d 1038, 1042 (2d Cir. 1995).  Gaps in an expert witness's knowledge or specialization affects the weight of the testimony, not its admissibility.  Abarca v. Franklin Cnty. Water Dist., 761 F.Supp.2d 1007, 1028-30 (E.D. Cal. 2011) (citing Robinson v. GEICO Gen. Ins. Co., 447 F.3d 1096, 1100 (8th Cir. 2006)); In re Silicone Gel Breast Implants Prods. Liab. Litig., 318 F.Supp.2d 879, 889 (C.D. Cal. 2004).

Mr. Meier has been qualified as a fire and explosion expert numerous times in both federal and state courts.  (Meier Report at p. 8, ECF No. 102-6).  Mr. Meier is an experienced fire investigator who is qualified to testify as an expert about the fire's origin and cause.  Peralta v. Worthington Indus. Inc., 2022 WL 112224, *2-*3 (D. Ariz. Jan. 12, 2022) (finding engineer with experience investigating the causes of fires and explosions was qualified to testify); Bitler v. A.O. Smith Corp., 400 F.3d 1227, 1234-35 (10th Cir. 2005) (finding experts were qualified to provide testimony that water heater was cause of the explosion

14

injuring the plaintiff).

## B.    Reliability Of Mr. Meier's Expert Opinion

There is no dispute that Mr. Meier's opinion as to the causation of the fire is relevant to the trier of fact's determination at trial.  Defendant challenges the reliability of Mr. Meier's opinion.  The Court analyzes the reliability of an expert opinion by reviewing if:

(1)   it is based on sufficient facts or data;

(2)   it is the product of reliable principles and methods; and

(3)   the witness has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; see Wendell v. GlaxoSmithKline LLC, 858 F.3d 1227, 1233-38 (9th Cir. 2017).  The standard is not the correctness of the opinion, but rather whether it is reliable. Id.

Courts must be careful not to look too narrowly at each individual consideration without taking into account the broader picture of the expert's overall methodology when evaluating an expert opinion.  Id. at p. 1233.  The District Court is not tasked with deciding whether the expert is right or wrong, just whether the expert's testimony is sufficiently reliable to be helpful to the jury.  Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc., 738 F.3d 960, 969-70 (9th Cir. 2013).

The Ninth Circuit Court of Appeals sitting en banc has explained that the test for reliability is a flexible one. Estate of Barabin v. AstenJohnson, Inc., 740 F.3d 457, 463 (9th Cir. 2014) (en banc).

### 1.   Mr. Meier's Report Is Based On Sufficient Facts And Data

In making his determinations, Mr. Meier reviewed the Hawaii Fire Department photographs, videos, and report.  (Meier Report at p. 11, ECF No. 102-6).  Mr. Meier visited the accident scene, and he reviewed the surveillance camera footage from neighboring homes of the actual explosion.  (Id.)  He attended the first evidence examination in Honolulu on September 30, 2021, and subsequent examinations on July 26 and 27, 2022, as well as in Colorado on October 26, 2022.  (Id.)

Mr. Meier also reviewed the depositions of the parties and other reports and materials in making his conclusions.  (Id.) Mr. Meier reviewed sufficient facts and data in making his conclusions.  Kumho Tire Co. Ltd. v. Carmichael, 526 U.S. 137, 141 (1999).

### 2.   Mr. Meier's Report Is Based On Reliable Principles And Methods

Mr. Meier's report explained in the section entitled "Methodology of the Investigation" that Mr. Meier applied the

Scientific Method in conducting his investigation and analysis into the cause of the fire according to recognized and accepted standards and practices of fire and explosion investigation. (Meier Report at p. 7, ECF No. 102-6).  The Report explained that fire and explosion investigation and analysis is guided by the standards and practices set forth in the National Fire Code, National Fire Protection Association ("NFPA") Code 921 - Guide for Fire and Explosion Investigations.  (Id.)  Mr. Meier stated that he is extremely familiar with the standards as he serves on several committees and task groups for, and has contributed to, the standards set forth in NFPA 921.  (Id. at p. 8).

Defendant American Water Heater Company agrees that the methodology employed by Mr. Meier is the reliable method generally accepted in the relevant expert community.  See Kumho Tire Co. Ltd., 526 U.S. at 156.

### 3.   Mr. Meier Reliably Applied The Methodology To The Facts Of The Case

Defendant American Water Heater Company argues that Mr. Meier did not apply the methodology correctly because he did not rule out the light switch as an ignition source.  Defendant is incorrect.

Mr. Meier specifically ruled out the light switch as a possible ignition source of the explosion and fire.  Mr. Meier's Report states, "[a]fter analyzing the surveillance videos, it was

determined that Connie Wharton went into the closet without turning on the light and exited the closet before the explosion occurred.  This eliminated the closet lighting and light as possible ignition sources."  (Meier Report at p. 17, ECF No. 102-6).

Defendant also argues that Mr. Meier did not apply the methodology properly because he did not conduct specific enough testing to prove his hypothesis.

Testing is not a prerequisite to the admissibility of expert testimony.  Cummins v. Lyle Indus., 93 F.3d 362, 369 (7th Cir. 1996).  Testing is sometimes not possible, especially in product liability cases where the product is destroyed or otherwise unavailable.  See Rodrqiquez v. Gen. Dynamics Armament and Tech. Prods., Inc., 696 F.Supp.2d 1163, 1174-75 (D. Haw. 2010) (finding that expert testimony as to cause of detonation was admissible and lack of testing was not a valid basis to exclude testimony where expert reasonably based his determination on scientific method and experience in the field).

In a similar case, in Dalton v. McCourt Elec. LLC, 112 F.Supp.3d 320, 327-28 (E.D. Pa. 2015), the district court permitted an expert to testify on the causation of a fire without conducting testing.  The district court explained that the expert's testimony was reliable because he applied the scientific method, identified the potential sources of ignition in the area,

18

eliminated the sources that he could, and was left with one source that he identified as the source of the ignition of the fire. Id.

Just as here, Mr. Meier applied the scientific method, identified the potential sources of ignition in the area, eliminated the other sources, and determined that it was caused by an electrical arc from the thermostat in Defendant American Water Heater Company's water heater. Mr. Meier further concluded that the fire at the Wharton's home could have been avoided if American Water Heater Company provided an air tight and ignition protected thermostat. (Meier Report at p. 30, ECF No. 102-6). Mr. Meier also found, given his extensive experience in the field of fire safety, that the lack of warning labels on the water heater to indicate it was a potential ignition source may have prevented the accident. (Id. at pp. 30, 33). Mr. Meier is permitted to testify as to his expert opinions at trial.

Defendant has retained its own expert to dispute Mr. Meier's conclusions. The dispute is for the trier of fact, not the Court, to determine which expert is the more reliable. City of Pomona v. SQM N. Am. Corp., 750 F.3d 1036, 1049 (9th Cir. 2014).

## II.  **Ms. Gill's Expert Opinion**

JoEllen Gill's expert report states that the safety information provided with American Water Heater Company's water

heater product was "embedded within other information that does
not follow the American National Standards Institute's ANSI Z535
series of standards as it pertains to embedded safety
information."  (Gill's Report at pp. 12-13, attached as Ex. 8 to
Def.'s Motion, ECF No. 99-10).  Gill concluded that "given the
overall design/condition of the embedded safety information
(related to the storage of material near the water heater)
contained within the manual, it was foreseeable that the manual
would not reliably capture attention and fully inform the users
of the hazards and consequences associated with storing
materials, such as flammable liquids/gases, in close proximity to
the water heater."  (Id. at p. 13).  Gill explained that there
were "no on-product warnings discussing the hazards associated
with storing flammable liquids/gases, much less to alert users of
the serious risk of a fire/explosion as a consequence of doing
so."  (Id. at p. 17).

Ms. Gill explained that "my research regarding the warnings
and hazard communications of other manufacturers revealed that
many electric water heater manufacturers do provide the necessary
warnings regarding hazards associated with storing flammable
liquids/gases near their water heaters."  (Id. at p. 19).  Ms.
Gill concluded that:

> By not warning of a potential fire and explosion risk,
> American Water Heater Company foreseeably misled its
> customers and consumers into believing that its subject
> water heater was safe to install in a garage or closet

adjacent to a garage.

By not warning of a potential fire and explosion risk, American Water Heater Company foreseeably misled its customers and consumers into believing that there was no danger in storing flammable liquids and gasses in the same storage closet as its subject water heater....

(Gill Expert Report at p. 27, ECF No. 99-10).

## A.   Ms. Gill's Expert Qualifications

Ms. Gill holds a Bachelor of Science Degree in Human Factors Engineering and a Master's Degree in Engineering. (Gill Expert Report at p. 3, ECF No. 99-10). Ms. Gill has been a Certified Human Factors Professional since 2006 and a Certified Safety Professional since 2013. (Id.) Ms. Gill explains in her report that she has been working within the fields of Human Factors and Safety and Risk Management for the last 42 years. (Id.)

Since 1994, Ms. Gill has been employed with Applied Cognitive Sciences, Inc., which is a consulting group specializing in Human Factors Engineering, particularly safety and risk management. (Id. at p. 4). She explains that Human Factors is the science that combines the traditional engineering disciplines, such as mechanical engineering, safety engineering, and accident reconstruction, with the science of human behavior. (Id.) Her report explains that she has been qualified to testify as an expert witness in the field of Human Factors and Safety and Risk Management in state and federal courts throughout the

country.  (Id.)

     Ms. Gill's opinion is based, in part, on the conclusions of
Mr. Meier as to the cause of the fire.  Her reliance on Mr.
Meier's expert opinion does not render her unqualified to make
her own expert opinion.  It is well established that an expert
may rely on the opinions of other experts in formulating the
expert's own opinions.  In re Toyota Motor Corp. Unintended
Acceleration Mktg., Sales Practices & Prods. Liab. Lit., 978
F.Supp.2d 1053, 1066 (C.D. Cal. 2013).

     Ms. Gill is qualified to give an expert opinion in the field
of Human Factors Engineering.  She may testify as to her own
expert opinion regarding the sufficiency of the warnings on
Defendant American Water Heater Company's product at issue in
this case.  See Rogers, 922 F.2d at 1429.

### B.   Relevance and Reliability Of Ms. Gill's Expert Opinion

#### 1.   Ms. Gill's Testimony Is Relevant

     Plaintiffs' theory of the case is based, in part, on
Defendant American Water Heater Company's alleged failure to warn
of the dangers of storing flammable liquids and gases near its
product.

     Defendant American Water Heater Company argues that any
testimony from Ms. Gill regarding the sufficiency of the warnings
is not relevant because Mr. Wharton testified in his deposition

that he did not read the manual.  Defendant claims that any warnings would not have prevented the accident.  Defendant's argument is not persuasive.

First, as Plaintiffs point out, Defendant ignores that the warnings may have affected other people besides Mr. Wharton, notably Connie Wharton, the decedent, and Brandon Lee who went into the storage area and looked at the water heater five days before the fire.

Second, Defendant ignores the legal standard and Plaintiffs' theory of the case under Hawaii law.

Pursuant to Hawaii law, a manufacturer has a two-fold duty to provide:

    (1)  adequate instructions for safe use of the product; and

    (2)  warnings as to the dangers inherent in improper use of the product.

Acoba v. Gen. Tire, Inc., 986 P.2d 288, 302 (Haw. 1999).  When a product warning has been provided, the adequacy of that warning is a question of fact for the jury.  Id.

Ms. Gill's opinion that Defendant American Water Heater Company's product contained insufficient warnings is directly relevant to Plaintiffs' case.  The question as to the adequacy of the warnings and whether sufficient warnings may have prevented the accident are questions for the jury at trial.  Id.

## 2.   Ms. Gill's Report Is Sufficiently Reliable

Ms. Gill reviewed numerous materials and conducted research in forming her expert opinion.  (Gill Report at pp. 5-6, ECF No. 99-10).  Defendant confuses her opinion and the opinion of Mr. Meier.  As explained above, Ms. Gill may rely on Mr. Meier's causation opinion in forming her opinion as to the sufficiency of the warnings.  Gaps in her own knowledge or specialization affect the weight of her testimony, not its admissibility.  <u>Abarca</u>, 761 F.Supp.2d at 1028-30.

Ms. Gill set forth her methodology and the standards she applied in her expert report.  (Gill Report at pp. 7-9, 10, ECF No. 99-10).  She explained that she conducted her own research in addition to relying on information from Mr. Meier's opinion.  She is entitled to rely on other research and hearsay in forming her opinions.  Fed. R. Evid. 703; <u>Carson Harbor Vill., Ltd. v. Unocal Corp.</u>, 270 F.3d 863, 873 (9th Cir. 2001).  Ms. Gill applied standards from the American National Standards Institute's ANSI Z535 series in analyzing the warnings in this case, reviewed other manufacturers' warnings, and she reviewed testimony from other experts and Defendant's own 30(b)(6) witness in preparing her report.  (Gill Report at pp. 12, 17-18, 23-26, ECF No. 99-10).

Contrary to Defendant American Water Heater Company's position, Ms. Gill does not need to definitively state that the warnings would have assuredly prevented the fire and explosion

24

for her testimony to be admissible.  Ms. Gill's expertise, experience, and information in her report are relevant and reliable on issues that are central to the trial.  She need not say with definitive certainty that the failure to warn caused the decedents' deaths.  A jury could reasonably infer causation based, in part, on Ms. Gill's expert testimony.  See Pyramid Techs., Inc. v. Hartfod Casualty Ins. Co., 752 F.3d 807, 816 (9th Cir. 2014).

## CONCLUSION

Defendant American Water Heater Company's Motion To Exclude Testimony Of Richard Meier (ECF No. 102) is **DENIED.**

Defendant American Water Heater Company's Motion To Exclude Testimony Of JoEllen Gill (ECF No. 99) is **DENIED.**

DATED: December 28, 2023, Honolulu, Hawaii.

IT IS SO ORDERED.



Helen Gillmor
United States District Judge

Glen Y. Moribe, Individually and as Personal Representative of the Estate of Connie Elizabeth Yuk Han Moribe Wharton, Deceased, and the Estate of Sophia Grace Hitomi Wharton, Deceased; Sandra E. Moribe v. American Water Heater Company; Intermatic Incorporated, Civ. No. 21-00254 HG-WRP; **ORDER DENYING DEFENDANT AMERICAN WATER HEATER COMPANY'S MOTION TO EXCLUDE TESTIMONY OF RICHARD MEIER (ECF No. 102) and DENYING DEFENDANT AMERICAN WATER HEATER COMPANY'S MOTION TO EXCLUDE TESTIMONY OF JOELLEN GILL (ECF No. 99)**